### A. D. SCHENDEL v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

July 9, 1926.

No. 25,092.

**Reply construed as admitting entry in Iowa of valid judgment against defendant.**

1.   The reply construed as admitting the rendition in a competent court of Iowa, having jurisdiction of the parties and cause of action, of a judgment against defendant for the wrongful death of plaintiff's decedent, the recovery being under the Federal Employers Liability Act for the sole benefit of decedent's wife and minor child.

**Such admission raised bar to instant action unless plaintiff proved alleged fraud and conspiracy.**

2.   The existence of such judgment being admitted, it raised a bar to the instant action, unless plaintiff herein adduced proof of the allegation of fraud and conspiracy set out in the reply.

**New trial granted because of misapprehension of plaintiff.**

3.   The failure of plaintiff to adduce such proof through a misapprehension of the effect of the admissions should not result in judgment non obstante but a new trial.

[1]Reported in 210 N. W. 70.

Sufficient identity in representative character of plaintiffs to make judgment in one action bar to another.

4. It does not so clearly appear that decedent was not engaged in interstate traffic when killed that judgment non obstante rather than a new trial should be granted. Although there is not identity of persons plaintiff in the two actions, there is identity of their representative character and of the cause of action so as to make a judgment rendered and paid in one a bar to the other.

Law of Iowa as to attack on its judgments for fraud or perjury.

5. Under the law of Iowa judgments rendered in its courts are subject to attack for fraud in instituting the suit or giving the court jurisdiction, but not for fraud or perjury in determining the merits of the cause of action. Whether plaintiff can produce sufficient evidence of such fraud and conspiracy as will suffice to invalidate the judgment will be for the determination of the trial court.

Vacation of Iowa judgment.

6. It does not appear from this record that plaintiff may not by direct suit or motion in the Iowa court have the judgment rendered there annulled.

Death, 17 C. J. p. 1210 n. 98.
Judgments, 33 C. J. p. 1184 n. 50, 51; 34 C. J. p. 280 n. 96; p. 282 n. 2; p. 1065 n. 53, 60 New; p. 1068 n. 82; p. 1128 n. 61, 62; p. 1130 n. 82; p. 1132 n. 93 New; p. 1142 n. 72; p. 1153 n. 75, 76, 77.
See note in 32 L. R. A. (N. S.) 906; 15 R. C. L. pp. 922-924.

Action in the district court for Yellow Medicine county by the special administrator of the estate of Andrew J. Baker, deceased, to recover for the wrongful death of plaintiff's intestate. The case. was tried before Baker, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed as far as order denied judgment notwithstanding the verdict and reversed as far as it denied new trial.

*F. W. Root, C. O. Newcomb, A. C. Erdahl, Daly & Barnard* and *Bert O. Loe*, for appellant.

*Tom Davis, Ernest A. Michel* and *Paul D. Stratton*, for respondent.

HOLT, J.

For the wrongful death of Andrew J. Baker, a switchman in defendant's service, plaintiff, as special administrator of the estate, recovered a verdict. Defendant appeals from the order denying its motion in the alternative for judgment non obstante or a new trial.

Plaintiff was appointed special administrator by the probate court of Hennepin county shortly after Mr. Baker's death. This action was instituted in Yellow Medicine county early in 1924. In substance the complaint alleged the appointment and qualification of plaintiff, the death of Baker on November 11, 1922, in the defendant's yard at Cedar Rapids, Iowa, while engaged in his work as switchman for defendant moving interstate commerce, death being caused by the negligence of defendant and its servant, and that he left surviving his widow and one minor child. Admitting the employment and death of Baker, the answer set up contributory negligence and assumption of risk in addition to a general denial and pleaded in bar a judgment obtained against defendant by the domiciliary administrator of Baker's estate, appointed by the proper court of Linn county, Iowa, the place of his residence, said judgment being for the same cause of action herein set forth and rendered on the merits in the district court of said Linn county on October 6, 1923, for $10,000 and paid. The reply admitted the appointment and qualification of the administrator, the permission given him by the court to bring the action in said district court of Linn county, a court having jurisdiction of actions under the Federal Employers Liability Act, to recover damages sustained by the dependents of decedent on account of his wrongful death, and that after the appointment of such general administrator, on his resigning, one George W. Toms was, on the widow's petition, appointed and substituted in the suit before judgment.

There are also in the reply various allegations of fraud, collusion and conspiracy between the administrator and defendant, as well as of fraud and duress towards the widow, the next to the last paragraph reading:

"That the plaintiff admits that the defendant by its representatives, attorneys and agents filed an answer in the said cause pending in the said court [district court Linn County, Iowa], and that in pursuance of the plan, scheme and conspiracy to hinder and delay this plaintiff in the prosecution of an action in this state and to defraud the dependents, and procure a collusive and unjust and inadequate settlement by the defendant, the appearance of formality was given the said proceedings by an assumed trial, without witnesses or contest, and the plaintiff alleges that the entire proceeding was a fraud and a farce and undertaken only for the purpose of giving the appearance of legal and judicial sanction to the consummation of the plan and conspiracy heretofore referred to; but the plaintiff alleges that long prior to the time that the said proceedings were had the defendant widow had warned and notified the said George W. Toms that his appointment had been secured as result of fraud and duress and that she did not desire to have him settle the case but desired that the case proceed in Minnesota, and she alleges that while there was apparent judgment entered it was but the mere expression of an amount already agreed upon and fixed, and the plaintiff alleges that the said judgment was the result of fraudulant and corrupt conduct and conspiracy on the part of the defendant, its representatives and agents and the officers of the said court of Iowa."

The opening statement to the jury of plaintiff's counsel is in the settled case. Therein he stated that defendant had paid to the domiciliary administrator $10,000, and admitted the formal entry of the judgment in the district court of Linn county, Iowa, but of course coupled admissions with the assertions that proof would be adduced to sustain the allegations of fraud, conspiracy and duress set forth in the reply.

The appeal is in the main predicated upon two propositions: (1) The evidence fails to show that Baker was assisting in moving cars carrying interstate commerce when killed; and (2) the judgment rendered in Iowa for the same cause of action as the present, stands admitted by the reply and is a complete bar.

It would seem that defendant, insisting that the Iowa judgment is for a cause of action under the Federal Employers Liability Act, comes almost admitting that Baker was engaged in interstate commerce. But that aside, we do not consider the evidence so lacking as to the interstate character of the work Baker was doing when he was injured that judgment should be ordered non obstante upon this record. Even though none of the three cars being moved at the time did come from or were destined to points outside Iowa, their being set in upon spurs appears to have been necessary in order to clear the tracks for interstate transportation, and if anything be lacking as to that proof no doubt defendant has records which show the true facts and may be had at another trial. Moreover, the judgment and pleadings in the Iowa court, upon which defendant so much insists, of necessity are predicated upon the fact that Baker was engaged in interstate commerce and covered by the Federal Employers Liability Act.

We think the reply admits the existence in the district court of Linn county, Iowa, of a formal judgment against this defendant and in favor of the domiciliary administrator of Baker's estate, upon the same cause of action pleaded and proved in this case; that said district court had jurisdiction of actions to recover damages in behalf of decedent's dependents under the Federal Employers Liability Act; and, as stated, this judgment has been paid according to the express admission in the opening statement of plaintiff's counsel. So that if plaintiff wished to escape the consequences of the judgment he had to prove its invalidity. There was no attempt to so do. But plaintiff plants himself upon two legal propositions, neither of which we deem tenable. The first is that the admissions of the judgment and its payment cannot be accepted without accepting as true the connected allegations and statements of the fraud by which it was procured. We think this is not so. The fact of a formal existence of such a judgment as defendant pleaded in bar is admitted by the reply, and extrinsic matters in avoidance are pleaded. This admission dispensed with proof from defendant of the existence of the judgment it pleaded.

The second proposition is that there is no identity of parties plaintiff in the two actions and hence a judgment in one does not bar or merge the cause of action asserted in the other. Brown v. Fletcher's Estate, 210 U. S. 82, 28 Sup. Ct. 702, 52 L. ed. 966; Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. ed. 208, are relied on. Language in the last cited case considered apart from the facts may seem to support plaintiff. But it must not be lost sight of that those and other cases, dealing with the tangible assets and debts of an estate of deceased persons, do not present the same problems as do cases involving a cause of action given by a statute to an administrator for the sole benefit of the dependents of a deceased. The court in the Ingersoll case quotes this pertinent language from Stacy v. Thrasher, 6 How. 44, 12 L. ed. 337:

"Where administrations are granted to different persons in different States, they are so far deemed independent of each other that a judgment obtained against one will furnish no right of action against the other, to affect assets received by the latter in virtue of his own administration; for in contemplation of law there is no privity between him and the other administrator."

The cause of action for the wrongful death of Baker is given by the Federal Employers Liability Act to the use of his dependents. It is not given to his estate. It is transitory. It does not relate to tangible property located within any state. The act vests in the administrator a mere naked power to enforce the claim for the sole benefit of Baker's widow and son. It is unthinkable that in such a case administrators may be appointed in different states and each obtain and collect a judgment upon the one single cause of action given by the act mentioned. We think administrators so appointed and suing upon the same cause of action must be held in law to be identical though not of the same name—identical in their representative capacity and purpose. So considered, there is in the Iowa suit and the suit at bar identity of persons and parties, so as to conform to the test stated in Lyon v. Perin & G. Mnfg. Co. 125 U. S. 698, 8 Sup. Ct. 1024, 31 L. ed. 839:

"It is well settled that, in order to render a matter *res adjudicata*, there must be a concurrence of the four conditions, viz: (1) *Identity in the thing sued for*; (2) *identity of the cause of action*; (3) *identity of persons and parties to the action*; (4) *identity of the quality in the persons* for or against whom the claim is made."

In Troxell v. D. L. & W. R. Co. 227 U. S. 434, 33 Sup. Ct. 274, 57 L. ed. 586, the court held the second suit brought by the widow as administratrix under the Federal Employers Liability Act, not to have been upon the same claim as the first brought by her personally and in behalf of her children to recover for the death of her husband under the state law, so that a judgment against her in the first was not a bar to the second. There the court stressed the point of nonidentity of parties because of its decision in Am. R. Co. v. Birch, 224 U. S. 547, 32 Sup. Ct. 603, 56 L. ed. 879, holding that the act authorized the personal representative alone to maintain the suit and that the sole beneficiary had no right to sue. Dennison v. Payne (C. C. A.) 293 F. 333, also cited by plaintiff, is to the same effect. Neither case, nor so far as we can see any other of the authorities cited, determines that where as here both suits are to recover for the wrongful death of the same person in virtue of the same statute by a personal representative, as required by that statute, a judgment rendered and paid in the one suit in one state is not a bar to another suit in another state, the defendant being the same in each suit, but not the nominal plaintiff, the representative. The late case of C. R. I. & P. Ry. v. Schendel, 270 U. S. 611, 46 Sup. Ct. 420, 70 L. ed. 447, filed April 12, 1926, by the United States Supreme Court seems conclusive that there is here identity of plaintiffs so as to make the Iowa judgment res adjudicata. We think the judgment entered and paid in Iowa is a bar.

The above conclusion would ordinarily lead to judgment non obstante for defendant. But that should not be granted unless it is apparent that all matters going to establish plaintiff's cause of action have been fully presented to the court and jury. Clearly that was not done for plaintiff's counsel misconstrued the effect of the admissions in the reply and the opening statement of the case,

hence did not offer evidence as to the matters pleaded in avoidance of the judgment admitted and set up as a bar. If plaintiff has good ground upon which that judgment may be annulled or avoided, the opportunity to have it done should be given. Defendant of course claims for this judgment the full faith and credit guaranteed by the Federal Constitution to judgments of sister states, and contends it is not open to the collateral attack made in the reply. Support to the contention is found in this statement from Hanley v. Donoghue, 116 U. S. 1, 6 Sup. Ct. 242, 29 L. ed. 535:

"Judgments recovered in one State of the Union, when proved in the courts of another, differ from judgments recovered in a foreign country in no other respect than that of not being re-examinable upon the merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties."

Virtually the same view is expressed in State v. Pelican Ins. Co. 127 U. S. 265, 8 Sup. Ct. 1370, 32 L. ed. 239. However, in Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. ed. 366, the establishing a residence in another state by a husband for the purpose of obtaining a divorce is spoken of as a fraud to evade the laws of the state of his true residence, and it was held that in the courts of the latter state a decree so obtained may be attacked collaterally as rendered without jurisdiction, notwithstanding the full faith and credit clause of the Federal Constitution. U. S. v. Throckmorton, 98 U. S. 61, 25 L. ed. 93, quotes with approval this statement from Wells, Res Adjudicata, § 499:

"Fraud vitiates everything, and a judgment equally with a contract; that is, a judgment obtained directly by fraud, and not merely a judgment founded on a fraudulent instrument; for, in general, the court will not go again into the merits of an action for the purpose of detecting and annulling the fraud."

And in Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. ed. 538, speaking of the full faith and credit clause of §§ 1 and 2, art. 4, of the Federal Constitution, Chief Justice Fuller says:

"This does not prevent an inquiry into the jurisdiction of the court, in which a judgment is rendered, to pronounce the judgment, nor into the right of the State to exercise authority over the parties or the subject matter, nor whether the judgment is founded in, and impeachable for, a manifest fraud."

Like statements have been uttered by this and other courts. Schmitt v. Dahl, 88 Minn. 506, 93 N. W. 665, 67 L. R. A. 590; Moe v. Schaffer, 150 Minn. 114, 184 N. W. 785, 18 A. L. R. 1194; Gundlach v. Park, 140 Minn. 78, 165 N. W. 969, 167 N. W. 302; Keeler v. Elston, 22 Neb. 310, 34 N. W. 891; Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152, and cases cited in the annotation to Levin v. Gladstein, 32 L. R. A. (N. S.) 905.

It is also the rule that if in a sister state its judgments are subject to attack upon certain grounds they are subject to collateral attack upon like grounds when sued in or set up as a defense in another state. In other words, if the judgment is not conclusive, but open to a direct attack for fraud where rendered, it is also open to collateral attack on the same ground, when brought forward as a defense or a cause of action in the courts of a sister state. So it is held in Iowa, the court, in Cohn, Baer & Berman v. Bromberg, 185 Iowa, 298, 170 N. W. 478, saying: "But judgments of a sister state are entitled to no greater credit in the courts of this state than will be given thereto by the courts of the state where rendered, and may, in an action thereon, be impeached for want of jurisdiction or fraud in their procurement." As to what fraud avails in Iowa, the decision refers to Graves v. Graves, 132 Iowa, 199, 109 N. W. 707, 10 L. R. A. (N. S.) 216, 10 Ann. Cas. 1104, where the rule is thus stated: "False swearing or perjury alone is not ground for setting aside or vacating a judgment. But, if accompanied by any fraud extrinsic or collateral to the matter involved in the original case sufficient to justify the conclusion that but for such fraud the result would have been different, a new trial may be granted." In Mahoney v. State Ins. Co. 133 Iowa, 570, 110 N. W. 1041, 9 L. R. A. (N. S.) 490, it is said:

"The fraud which will justify the setting aside of a judgment must be something extrinsic and collateral to the question examined and determined in the action."

And in Ashby v. Manley, 191 Iowa, 113, 181 N. W. 869: "We have held that, in a suit on a judgment, the defendant cannot be allowed to attack the judgment on account of a defense to the cause of action which might be interposed in the action on which the judgment has been recovered, where there is no allegation or proof of fraud in the procurement of the judgment." See also Rogers v: Gwinn, 21 Iowa, 58, as to the nature of the fraud which subjects a foreign judgment to collateral attack.

Whether of the sweeping allegations of fraud, conspiracy and collusion between the defendant and the Iowa administrator in procuring his appointment, instituting the suit there, agreeing upon the amount of the judgment in spite of the protest of the widow, plaintiff may prove enough to avoid the judgment we need not now determine; nor whether plaintiff has so long delayed in challenging the Iowa judgment after knowledge of its rendition that it cannot now be attacked collaterally. Those are matters to be presented to and passed on by the trial court. Furthermore, the record does not show that it is too late for plaintiff, by motion or direct action, in the district court of Linn county, Iowa, to procure the vacation of the judgment and dismissal of the action before the instant action is retried.

Errors assigned upon instructions given and refused and upon rulings admitting the testimony of an experienced switchman as an expert witness are challenged. Since it is not likely that the same questions will again arise nothing need be said thereon.

Counsel for both parties have much offended against good practice in this appeal. The closing address to the jury deserves no place in the printed record since no point was made thereon in the motion for a new trial, nor was there need of printing the long decision of the supreme court of Iowa. Again, the printing in respondent's brief of matters wholly outside the record is indefensible.

The order insofar as it denies judgment non obstante is affirmed, but insofar as it denies a new trial it is reversed and a new trial is hereby granted.

WILSON, C. J. (concurring.)

Fraud should be a good defense to a foreign judgment. This means such fraud as deprives a party of a defense. Judicial acts if mixed with fraud are void. Any other theory would permit a party to derive a benefit from his own misconduct. Fraud as herein used relates to fraud in procuring the jurisdiction and not to a fraud which vitiates the cause of action. Payne v. O'Shea, 84 Mo. 129; Wilson v. Anthony, 72 N. J. Eq. 836, 66 Atl. 907; U. S. v. Throckmorton, 98 U. S. 61, 25 L. ed. 93; Vance v. Burbank, 101 U. S. 514, 25 L. ed. 929; Greenameyer v. Coate, 212 U. S. 434, 444, 29 Sup. Ct. 345, 53 L. ed. 587; Ross v. Stewart, 227 U. S. 530, 539, 33 Sup. Ct. 345, 57 L. ed. 626.

Under the Constitution of the United States judgments in personam of the various states are placed on the footing of domestic judgments, and they are to receive the same credit and effect when sought to be enforced in different states as they by law have in the state where rendered. A judgment fairly and duly obtained in one state is conclusive between the parties sued on in another state. It may however be met with the claim that it is the result of jurisdiction fraudulently obtained. Mills v. Duryee, 7 Cranch, 481, 3 L. ed. 411; Hampton v. McConnel, 3 Wheat. 234, 4 L. ed. 378; Welch v. Sykes, 3 Gilman (Ill.) 197, 44 Am. Dec. 689; Andrews v. Montgomery, 19 Johns. (N. Y.) 162, 10 Am. Dec. 213; Bimeler v. Dawson, 4 Scammon (Ill.) 536, 39 Am. Dec. 430; Bonfils v. Gillespie, 25 Colo. App. 496, 139 Pac. 1054; Roberts v. Pratt, 152 N. C. 731, 68 S. E. 240; Gordon v. Hillman, 47 Cal. App. 571, 191 Pac. 62.

The correct rule seems to be that a judgment of another state may be met with a plea of fraud when, and only when, fraud in the judgment could be set up against it in the courts of the state where it was rendered. The net result is that the judgment gets just the degree of conclusiveness which it has at home and no more. If the alleged fraud in this case may be made the basis for relief from the judgment in the court in the state of Iowa and not in this state, the Iowa judgment would be given greater faith and credit in this state than where it was rendered. This the Constitution

and acts of Congress do not require. If a party is entitled to relief there he should be entitled to it here. There is really no legal reason to shield a judgment from attacks which may be successfully made upon it in the state where it was rendered. A party should not under such circumstances be tossed from court to court and subjected to the incidental expense in consequence of the fraudulent acts of his opponent. Much of the apparent confusion among the authorities emanates from jurisdictions where the distinction between actions at law and suits in equity still exists. Defendant claiming benefits under the Iowa judgment has brought it into the courts of this state and is attempting to enforce it. Our attention has not been called to any authority which holds that the party defrauded must be sent back to the court in the state where the judgment was rendered. But there are some authorities which indicate that this is not necessary: Dunlap & Co. v. Cody, 31 Iowa, 260; Jaster v. Currie, 69 Neb. 4, 94 N. W. 995; Gray v. Richmond Bicycle Co. 167 N. Y. 348, 60 N. E. 663, 82 Am. St. 720; Mottu v. Davis, 151 N. C. 237, 65 S. E. 969; Babcock v. Marshall, 21 Tex. Civ. App. 145, 50 S. W. 728; Bank of Chadron v. Anderson, 6 Wyo. 518, 48 Pac. 197; Brown v. Parker, 28 Wis. 21. The method of getting the relief in Iowa, i. e., whether by direct application or collaterally, should not be the test as to whether the alleged wronged party is to have relief in our courts. The fact that he may get relief in the other state in some way should be sufficient. In fact the attack on the judgment here is about as direct as if the action were brought for that purpose alone.

## STONE, J. (concurring.)

I concur in the order for a new trial but submit that it should be conditioned upon the setting aside of the Iowa judgment by a direct proceeding for that purpose in the courts of Iowa. The accident occurred in Iowa. The beneficiary resides there. The judgment, which so long as it stands is a bar to recovery, was rendered for an Iowa administrator by an Iowa court. There was jurisdiction to appoint the administrator and to render judgment for him. The real claim and the only one that can be made is that there was fraud

and collusion in procuring that judgment. From an ethical standpoint it is plainly a case where plaintiff should not ask the courts of any other state to interfere.

That idea accords with the theory of the statutes of Iowa. Section 12527 of the Iowa Code of 1924 requires proceedings to enjoin the execution of a judgment to be brought "in the county and court in which * * * the judgment or order was obtained." Section 12787 provides for a simple and direct attack in the court wherein the judgment was rendered. It declares that "the district court * * * may, after the term at which the same was rendered or made, vacate or modify" a judgment "for fraud practiced in obtaining the same."

That the attack on the Iowa judgment now under consideration is collateral is obvious. There can be no suggestion to the contrary. It is the rule in Iowa, as elsewhere, that a judgment may be *directly attacked* if it "was entered through the fraud and collusion of the parties thereto." Stewart Lbr. Co. v. Downs, 142 Iowa, 420, 120 N. W. 1067, 29 L. R. A. (N. S.) 1190, 19 Ann. Cas. 1100. The subject was well considered in Kwentsky v. Sirovy, 142 Iowa, 385, 121 N. W. 27, and the rule was said to be that "if it be shown that the court has been imposed upon by some extrinsic or collateral fraud, the judgment may be attacked. The fraud or duress which will authorize the setting aside of a decree or judgment must be such as really prevented the unsuccessful party from having a trial." That is the kind of fraud the result of which the beneficiary claims to have been the victim in the instant case, and which would give her in equity a ground of attack upon the Iowa judgment within the rule applied by Judge Dillon in Rogers v. Gwinn, 21 Iowa, 58, and here in Gundlach v. Park, 140 Minn. 78, 165 N. W. 969, 167 N. W. 302. See also annotation of Alabama G. S. R. Co. v. Hill, 139 Ga. 224, 76 S. E. 1001, in 34 Ann. Cas. 996 (999). The rule in question, allowing in a proper case appropriate equitable relief from foreign judgments, is also discussed in Freeman, Judgments (5th ed.) § 1402. It is that doctrine which induces my concurrence in the principle of this decision, but I don't think that it should be so

applied as to permit a resident and citizen of Iowa to put upon Minnesota courts the burden, and upon Minnesota taxpayers the expense, of relieving her, if finally her proof entitles her to relief, from this judgment of the courts of her own state. To condition the new trial here upon the vacation of the judgment by a proper proceeding in Iowa seems to me only a commonsense exercise of our discretion.

QUINN, J. (concurring.)
I concur in the views of Mr. Justice Stone.